IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEBORAH A. BARNES,

                Plaintiff,

v.

ANDREW M. SAUL, Commissioner of
Social Security,

                Defendant.

OPINION AND ORDER

18-cv-660-wmc

---

Pursuant to 42 U.S.C. § 405(g), plaintiff Deborah A. Barnes seeks judicial review of a final determination that she was not disabled within the meaning of the Social Security Act between her alleged onset date of April 4, 2012, and the date of her hearing, May 10, 2017. Barnes contends that remand is warranted because the administrative law judge ("ALJ") erred in (1) discounting the opinion of her treating psychiatrist, (2) evaluating whether Barnes met or equaled Listing 12.06, and (3) determining that Barnes' subjective allegations contradict substantive evidence in the record. The court held a telephonic hearing on December 18, 2019, at which the parties appeared by counsel. After considering the parties' briefing and arguments made during the hearing, the court agrees with plaintiff that the ALJ failed to provide good reasons for discounting the opinion of Barnes' treating psychiatrist. As such, the court will reverse and remand for further proceedings.

# BACKGROUND[1]

### A. Overview of Claim

Plaintiff Deborah A. Barnes applied for social security disability benefits on March 24, 2014, claiming an alleged onset date of April 4, 2012. With a birth date of November 27, 1963, Barnes was at the very top end of the "younger individual" range on the alleged disability onset date and moved into the "closely approaching advanced age" range during the administrative proceedings. Until her alleged onset date, Barnes had past work experience as a customer service representative, virtual receptionist, sales representative and insurance agent. She claimed disability based on bi-polar disorder, anxiety, panic disorder, depression, ADD, hypothyroidism and edema. (AR 84.)

### B. ALJ Decision

The ALJ John Martin held an in-person hearing on May 10, 2017, at which the plaintiff appeared personally and by counsel. The ALJ concluded that as of the alleged onset date, Barnes suffered from the following severe impairments: an organic mental disorder, an affective disorder, and an anxiety disorder. (AR 22.) In so finding, the ALJ rejected Barnes' claim of an inability to work due to edema and hypothyroidism, finding each controlled by medication and neither caused significant work-related limitations. (*Id.*)

In light of the ALJ's finding of severe mental health issues, he then considered whether Barnes' issues met or medically equaled Listing 12.02 (organic mental disorders), Listing 12.04 (affective disorders), and Listing 12.06 (anxiety disorders). In evaluating the paragraph B criteria, the ALJ concluded that Barns has: moderate limitations in

---

[1] The following facts are drawn from the administrative record, which can be found at dkt. #9.

understanding, remembering or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting or maintaining pace; and mild limitations in adapting or managing oneself." (AR 23.) Notably, the ALJ did not find any marked or extreme limitations.

The ALJ acknowledged that if he had accepted the September 3, 2015, report of plaintiff's treating psychiatrist, Dr. Patricia F. McCafferty, then Barnes would meet either Listing 12.04 or 12.06. The ALJ, however, found her opinion "extreme" and "did not assign it any significant weight. (AR 23.) Later in the opinion, the ALJ explained that the marked or extreme restrictions noted in the September 3 report are "too overstated to assign it significant weight," specifically noting the lack of any hospitalizations and McCafferty's treatment notes, which "did not support such extreme deterioration in Ms. Barnes's condition" from March or May 2015 to September 2015. (AR 27.) The ALJ also explained that he viewed all three of Dr. McCafferty's reports -- in addition to the September 3 report, McCafferty had prepared two earlier ones from March and May 2015 -- as "inconsistent." (*Id.*)

Still, in determining Barnes' residual functional capacity ("RFC"), the ALJ concluded that she could "perform a full range of work at all exertional levels but with nonexterional limitations." (AR 23-24.) Specifically, the ALJ limited her to

> perfom[in] only simply, routine and repetitive tasks, but not at a production rate pace (e.g. assembly line work). She could make simple work-related decisions. She could have only occasional interactions with the public, supervisors and co-workers.

3

(AR 24.)[2] In arriving at these limitations, the ALJ relied on Barnes' hearing testimony and her medical records, noting "her diagnosis of borderline personality disorder, bipolar II disorder and a generalized anxiety disorder." (*Id.*) The ALJ also noted Barnes' treatment, including medication management with Dr. McCafferty, and ongoing individual and group therapy.

In discounting Barnes' claims of additional limitations generally and Dr. McCafferty's opinion, the ALJ relied on: (1) "persistent problems with noncompliance, including no-shows for appointment" and notations that the "claimant often started, stopped or adjusted her medications on her own for a variety of reasons"; (2) some treatment notes describing the claimant as "improved," commenting that she was dressed and groomed appropriately, maintained good eye contact, with "unpressured speech," was "pleasant and cooperative," and "maintained control"; (3) Barnes' engaged in "significant daily activities," including caring for her dogs, cleaning her house, doing laundry, preparing simple meals and babysitting for her granddaughter; and (4) Barnes' travel to Florida (2015), Mexico (2016) and the Madeline Island (2013). The ALJ also relied on the opinions of two state agency doctors, Larry Kravitz, Psy.D. (review completed on August 12, 2014), and Dr. Carlos Jusino-Berrios (review completed on June 4, 2015), based on their review of the medical records, assigning great weight to their findings of only mild or

---

[2] The ALJ also adopted some exertional limitations that Barnes claimed she could not perform; specifically, he limited her to: occasionally climbing ramps and stairs and never climbing ladders, ropes or scaffolds; never having her work at unprotected heights with moving mechanical parts; and never operating a motor vehicle. (AR 24, 27.)

4

moderate limitations in the paragraph B criteria described above, as well as their finding that Barnes has the capacity to sustain simple work. (AR 91, 108.)

The ALJ also summarized the findings in a report, following Barnes' neuropsychological testing by Gary Bauste, Psy.D., which was completed in August 2014, without explaining how this report impacted his view of her cognitive limitations. The ALJ further noted repeated concerns in the medical record regarding Barnes' auditory difficulties, and the need for hearing aids, but, again, did not describe how he factored this limitation into his RFC.

Finally, consistent with the vocational expert's testimony, the ALJ found that Barnes could not preform her past jobs, but that she could perform vehicle cleaner, food preparation and routine office clerk jobs, all of which have significant numbers in the national economy. As such, the ALJ determined that she was not disabled.

### C. Medical Record

Barnes' appeal does not touch on her physical limitations or the ALJ's treatment of them, so the focus of the following medical summary will be on her mental health records, of which the record is replete. Indeed, abundant evidence supports the ALJ's determination that Barnes suffers from severe mental health impairments, including diagnosis of bipolar disorder, depression, anxiety disorder, post-traumatic stress disorder, and cognitive disorder. (Pl.'s Opening Br. (dkt. #13) 2-3 (citing record).) On March 30, 2012, Barnes first established care with Dr. McCafferty of the Mayo Clinic Health System after transferring from another psychiatrist. (AR 387.) Barnes remained in her care throughout the entire period of the administrative record. Dr. McCafferty's records reflect Barnes'

struggle to find a proper combination of drugs to address her depression, anxiety and bipolar disorder, while also taking into consideration side effects of these various medications and dealing with insurance restrictions. (AR 331, 375, 389, 623, 627, 629, 631-32.)

The record contains extensive notes from individual psychotherapy appointments and group therapy sessions, though at times insurance problems disrupted her ability to attend psychotherapy. (Pl.'s Opening Br. (dkt. #13) 4 (citing record).) Even with medication and regular therapy, the record reflects that "Barnes' mental health symptoms have ebbed and flowed, stabilizing somewhat at times, but then worsening against." (*Id.* (citing record).) There are also several references to Barnes' struggle with passive suicidal ideation. (AR 569, 576, 595, 735.)

As described above, Barnes underwent neuropsychological testing by Dr. Bauste in August 2014. (AR 463-70.) The testing was broken up over two days due to "significant emotional distress." (AR 470.) Based on this testing, Dr. Bauste concluded that "Deborah did produce an abnormal cognitive profile; however, due to significant psychological instability and distress, the following findings are likely a conservative estimate of cognitive functioning." (AR 463.) Dr. Bauste specifically noted concerns with visual memory functioning. (*Id.*) Dr. Bauste also repeatedly mentioned that Barnes was "struggling with an unstable mood," was "quite tearful and distraught," and that her current depressed episode and anxiety "appear to be largely influencing her cognitive functioning." (*Id.*)

As also described above, Dr. McCafferty completed three forms. On March 6, 2015, McCafferty completed a "Mental Disorder Questionnaire Form," in which she noted, that Barnes did not require assistance to keep her appointments, and that she was "casually

6

dressed, appropriately groomed, psychomotor agitated, close to crying at times." (AR 419.)[3] As for her present illness, the form states, "patient complains of tinnitus and 'bird chirping in ears' after increasing Lexapro medication, weigh gain, middle (*sic*) insomnia." (*Id.*) For past history, the form notes: "no hospitalizations, outpatient psychotherapy, medications." (*Id.*) While Dr. McCafferty further notes for her current mental status that Barnes is "close to crying, psychomotor agitated, distressed, overwhelmed, frustrated, angry but controlled," it also notes that she has "fair memory and judgment, no perceptual disturbance." (AR 420.) For current level of functioning, with the same four paragraph B categories, the form states "unknown, not discussed," "N/A," or "not assessed" for each. (AR 421-22.)

In the May 1, 2015, form, Dr. McCafferty described "no abnormalities" with respect to general observations, listed her various mental health diagnosis in responding to present illness, and for past history of mental disorders, simply wrote, "see notes." (AR 424.) While the form indicated that Barnes was pleasant (circling that word), she also circled, "emotional lability" and indicates that Barnes "gets easily overwhelmed." (AR 425.) Again, with respect to the four paragraph B categories, the form is limited. While noting "no assurance needed for routine ADLs," Dr. McCafferty also noted that: she did not assess social functioning; Barnes' concentration and task completed were "somewhat impaired"; and that Barnes' adaptation to work or work-life situations was "unknown." (AR 426-27.)

---

[3] The court notes that most of this form appears to have been completed by someone else, given the striking difference in handwriting in this form as compared to the latter two, though Dr. McCaffrey signed off on its contents.

Finally, Dr. McCafferty's September 3, 2015, form is titled "Social Security Mental Health Treating Source Inquiry," includes different questions, and expressly seeks the extent of limitations. (AR 437-40.) Critical to Barnes' appeal, Dr. McCafferty indicates that Barnes is not capable of full time employment. (AR 437.)[4] McCafferty also indicated that Barnes would be off-task more than 10% of a normal work day due to CPP issues. (AR 437.) The form further noted that Barnes has marked restrictions with respect to maintaining social functioning and CPP, and that she suffers repeated decompensation. The form next checked off the level of limitations for various subcategories, marking them *all* as either marked or extreme. (AR 437-39.) Dr. McCafferty indicated that she based these findings on Bauste's neuropsychological testing, and current results of other tests. (AR 439.) A contemporaneous treatment notes indicates that the form was completed during an appointment with Barnes. (AR 823-24.)

OPINION

The standard by which a federal court reviews a final decision by the Commissioner of Social Security is well-settled. Findings of fact are "conclusive," so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a

---

[4] She also indicates that her current Global Assessment of Functioning ("GAF") score is 35, with the highest score in the last year being a 40. (AR 437.) A score of 31-40 shows "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed adult avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." "Global Assessment of Functioning," Wikipedia, https://en.wikipedia.org/wiki/Global_Assessment_of_Functioning (last visited Dec. 16, 2019).

8

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Accordingly, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). At the same time, the court must conduct a "critical review of the evidence," *id.*, and insure the ALJ has provided "a logical bridge" between findings of fact and conclusions of law, *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

Here, plaintiff contends that the ALJ erred in (1) discounting the opinion of her treating psychiatrist; (2) evaluating whether Barnes met or equaled Listing 12.06; and (3) determining that Barnes' subjective allegations contradict substantive evidence in the record. The court will address each challenge in turn, taking the first two together.

## I. Treatment of Dr. McCafferty and Evaluation of Listing 12.06

Plaintiff faults the ALJ's rejection of Dr. McCafferty's September 3, 2015, report, and based on this, plaintiff argue that the ALJ erred in failing to find that Barnes met or medically equaled Listing 12.06. Indeed, the ALJ recognized that if he had accepted McCafferty's opinion, he would have found that she met a listing. (AR 23.)

"An ALJ who does not give controlling weight to the opinion of the claimant's treating physician must offer 'good reasons' for declining to do so." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(2)). Generally, the

opinions of a claimant's treating physician are "give[n] more weight" because he or she is "likely to be the medical professional[] most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations." 20 C.F.R. § 404.1527(d)(2) (2011).[5] If an ALJ chooses not to give a treating physician's opinion controlling weight, "the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistent and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2019).

Here, the ALJ offered three reasons for placing little weight on McCafferty's September 3, 2015, report: (1) the report was inconsistent with her two prior statements and the medical record did not support a finding of "extreme deterioration" between the second and third reports to explain the inconsistencies; (2) the limitations noted were too "extreme" or "overstated" in light of the lack of hospitalizations; and (3) McCafferty "relied quite heavily on Ms. Barnes's subjective reports of symptoms and limitations" in completing the form. (AR 27.) In considering the factors described above, it appears that the ALJ only considered the consistency and supportability of the physician's opinion. With respect to the other factors, the facts -- a consistent five-year treatment relationship, by a psychiatrist, relying on neuropsychological testing completed by a third-party and other tests -- would appear to weigh in favor of placing controlling weight on McCafferty's

---

[5] This regulation governs claims filed before March 27, 2017.

opinion, or at least does not provide a basis for discounting it. Plaintiff argues that these three bases independently, and in combination, do not provide a good reason to reject McCafferty's opinion.

*First*, as to the inconsistency of McCafferty's September 3, 2015, report and the earlier forms she completed in March and May 2015, the court agrees with plaintiff that the forms do not show inconsistencies. Rather, the September 3, 2015, form calls for more detailed information, including a specific assessment of her ability to engage in work, and McCafferty completed the *entire* form as compared to the previous forms where a number of questions are marked as "unknown, not discussed," "N/A," or "not assessed." As such, McCafferty's subsequent report is not inconsistent with the prior reports; rather, it is simply a more robust and complete assessment of Barnes' mental impairments.[6] During the hearing, counsel for the Commissioner emphasized that the ALJ reasonably interpreted "N/A" as none, meaning that Barnes' mental condition does not interfere with her social functioning and ongoing efforts by Dr. McCafferty to arrive at some combination of medication that would allow Barnes to function effectively in her daily life. This interpretation strikes the court as unreasonable, especially given Barnes' well-documented mental health issues. A more reasonable interpretation and one supported by the form as a whole is that in marking "N/A," McCafferty simply offered no opinion as to Barnes' current level of functioning. Because there are no material inconsistencies between the September 2015 report and the March and May 2015 reports, Barnes need not show a

---

[6] The one possible exception may be McCaffrey's note in the May 2015 report that Barnes' concentration and task completed were "somewhat impaired." (AR 427.) Even then, this notation is not clearly inconsistent with her September 3, 2015, findings.

11

deterioration in her condition to justify the impairments noted by McCafferty in the September 2015 report, though the court notes that McCafferty increased Barnes' lithium prescription in the month a week before the September 2015 report, which at least signals that her mental health condition was not stable. (AR 830.)

*Second*, the ALJ purported to reject McCafferty's findings in her September 2015 report because they were "overstated" and "extreme," relying on the lack of hospitalizations to justify his reasoning. The ALJ, however, stops short of explaining why a record of hospitalizations would be required to support a finding of marked or extreme limitations in the paragraph B criteria. To the contrary, in light of McCafferty's extensive treatment history of Barnes, her specialization as a psychiatrist and her review of neuropsychological testing, McCafferty would seem to be in a good position to assess Barnes' limitations.

*Third*, the ALJ relies on the fact that Dr. McCafferty considered Barnes' subjective reports. There are at least two problems with this reason. First, McCafferty noted on the form that she relied on other testing, including the neuropsychological tests described above. (AR 439.) As such, the ALJ's inference that McCafferty relied "heavily" on Barnes' subjective statements is not necessarily fair as a matter of fact. At the hearing, counsel for the Commissioner directed the court to McCafferty's contemporaneous treatment notes, indicating that she filled out the September form during her appointment with Barnes. (AR 823-24.) While McCafferty notes Barnes providing "examples that she gets excessively angry with supervisors or anxious leading to having to take excessive time away from her tasks," she also noted that she relied on Bauste's August 2014 testing and her current GAF (and highest score in the last year). (AR 823.) *At minimum*, it is reasonable to assume that Dr. McCafferty also relied on her clinical observations, a skill she is far

more reliable to undertake than the ALJ, given her role as Barnes' long-standing, treating psychiatrist, even if Barnes was present and participated in the completion of the form.

Second, particularly in the mental health context, diagnosis of conditions and an understanding of the limitations they pose *necessarily* require reliance on subjective symptoms. As the Seventh Circuit explained in *Aurand v. Colvin*, 654 F. App'x 831 (7th Cir. 2016),

> a psychological assessment is by necessity based on the patient's report of symptoms and responses to questioning; there is no blood test for bipolar disorder. The Commissioner cites cases in which ALJs discounted medical opinions resting entirely on subjective complaints of pain that could not be explained by the objective medical evidence. *See Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013); *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). We have cautioned that even physical pain often cannot be explained through diagnostics, *see, e.g., Pierce v. Colvin*, 739 F.3d 1046, 1049–50 (7th Cir. 2014); *Sims v. Barnhart*, 442 F.3d 536, 537 (7th Cir. 2006), but for bipolar disorder there isn't "objective medical evidence" that can support a diagnosis. Thus it's illogical to dismiss the professional opinion of an examining psychiatrist or psychologist simply because that opinion draws from the claimant's reported symptoms.

*Id.* at 837. Critically, there is nothing in the record to suggest that her medical providers viewed her as a malingerer or otherwise questioned her veracity.

During the hearing, counsel for the Commissioner reasonably warned of concerns of crediting reports completed by treating physicians based on a patient's subjective statements. Here, for the reasons provided above, Dr. McCafferty's September 23, 2015, report is based on more than Barnes' own statement. Regardless, the court is equally concerned with an ALJ presuming that a psychiatrist treating a profoundly challenged patient over a three-year period is easily hoodwinked into going along with the subjective

13

claims of a patient (or her attorney) to support a claim for social security, contrary to the physician's own medical assessment and ethical obligation.

For these reasons, the court concludes that the ALJ failed to offer "good reasons" for discounting Dr. McCafferty's opinion. In light of the ALJ's concession that adoption of McCafferty's opinion would mean that Barnes' mental health conditions meet or medically equal a Listing, the court further credits this basis for reversal.

## II. Evaluation of Subjective Statements

The agency has prescribed a two-step process for evaluating a claimant's own description of his or her impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." Social Security Ruling 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 FR 14166-01 (superseding SSR 96-7p); *see also* 20 C.F.R. § 416.929. If the ALJ answers this question affirmatively, then he will "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . ." SSR 16-3p, at *2.[7] When faced with a discrepancy between the objective evidence and the claimant's subjective complaints, the ALJ is to resolve the

---

[7] With the recent issuance of SSR 16-3p, the Social Security administration has indicated that it would no longer assess the "credibility" of a claimant's statements, but would instead focus on determining the "intensity and persistence of symptoms." Social Security Regulation (SSR) 16-3p, at *2. Reflecting on this change in wording, the Court of Appeals for the Seventh Circuit has opined that it "is meant to clarify that administrative law judges are not in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). Thus, this court will continue to apply pre-SSR 16-3p circuit case law in reviewing an ALJ's evaluation of a claimant's subjective complaints.

14

discrepancy by considering "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, at *4. When a court reviews the ALJ's assessment of the claimant's subjective complaints, the court looks to see whether the ALJ's credibility determination is "reasoned and supported," as it may be overturned only if it is "patently wrong." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). A credibility determination is patently wrong if it is illogical or "lacks any explanation or support." *Id*.

Having determined reversal and remand is appropriate in light of the ALJ's treatment of McCafferty's opinion, the court need not review all of plaintiff's challenges to the ALJ's credibility determination, other than to note two particular concerns. First, the ALJ commented that Barnes had "persistent problems with noncompliance, including no-shows for appointments," but the record does not necessarily support such a finding. While the record certainly demonstrates Barnes' struggle with finding the proper medications to manage her mental health conditions, the record also reflects that Barnes complained of side effects and also challenges with insurance coverage. Moreover, there is only one no-show notation, and even then the note provides that the appointment may have remained on the schedule in error. (AR 616.)

The court also notes that the ALJ comes dangerously close to equating Barnes' activities of daily living with an ability to sustain competitive employment, which the Seventh Circuit has repeatedly advised is not allowed. *See, e.g.*, *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014). The ALJ's analysis, specifically relying on Barnes' ability to go

on a few vacations, babysit a grandchild at night and cook simple meals, is particularly problematic in light of the specific characteristics of bipolar disorder, as "by nature episodic and admits to regular fluctuations even under proper treatment." *Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011). On remand, the ALJ should reevaluate Barnes' subjective statements.

ORDER

IT IS ORDERED that the decision of defendant Andrew M. Saul, Commissioner of Social Security, denying plaintiff Deborah A. Barnes' application for disability benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff.

Entered this 19th day of December, 2019.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge